Argued November 17, affirmed December 8, 1954, petition for
rehearing denied January 5, certiorari denied by United
States Supreme Court May 23, 1955

# STATE OF OREGON *v.* ELLIOTT
277 P. 2d 754

*Leo Levenson,* Portland, argued the cause and filed briefs for appellant.

*James J. Kennedy,* Deputy District Attorney, Portland, argued the cause for respondent.

LATOURETTE, C. J.

Dr. Ross H. Elliott, a chiropractor, was convicted and sentenced for the violation of § 23-927, OCLA

(ORS 161.310), previously referred to by this Court as the Oregon Nuisance Act, it being charged that he and another unlawfully kept and maintained an office for the purpose of producing abortions. The appeal comes to us on a demurrer to the indictment, which indictment follows:

"Dr. Ross H. Elliott, and Jane Doe, whose true name is unknown are accused by the Grand Jury of the county of Multnomah and State of Oregon, by this indictment of the crime of committing an act grossly disturbing the public peace and health, openly outraging public decency and injurious to public morals, committed as follows:

"The said Dr. Ross H. Elliott and Jane Doe, whose true name is unknown, on the 24th day of April, A.D. 1951, in the County of Multnomah and State of Oregon, then and there being and then and there unlawfully conspiring, confederating and agreeing with each other thereto, did on said day in the said county and state, wilfully and wrongfully set up, equip, furnish with apparatus, and thence continuously until the 18th day of May, 1951, and ever since said time, keep and maintain a certain public place, known as the office of Dr. Ross H. Elliott, in the Times Building, in the City of Portland, said county and state, with the intent and purpose of them, the said Dr. Ross H. Elliott and Jane Doe, whose true name is unknown, of wilfully, wrongfully and unlawfully committing, producing and procuring abortions in said public place, upon women pregnant with child, and so having set up, furnished, equipped, kept and maintained said public place with the intent and for the purpose aforesaid, the said Dr. Ross H. Elliott and Jane Doe, whose true name is unknown, on the 24th day of April, 1951, in the said public place known as Dr. Ross Elliott's office, in said county and state, did wilfully and wrongfully commit and produce an abortion upon one Hazel Doe, she, the said Hazel Doe then and there being a woman pregnant with child, and did then and there between the 24th day of April, 1951,

and the 18th day of May, 1951, and ever since said time, wilfully and wrongfully commit and produce upon women then and there pregnant with child, the names and numbers of which women are to the Grand Jury unknown, abortions contrary to the Statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.''

The Nuisance Act, upon which the indictment was based, is as follows:

''If any person shall wilfully and wrongfully commit any act which grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages the public decency and is injurious to public morals, such person, if no punishment is expressly prescribed therefor by this Code, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one month nor more than six months, or by fine not less than $50 nor more than $200.'' § 23-927, OCLA.

For the first time, on appeal, the constitutional question is raised that the Nuisance Act is vague and uncertain and therefore void by virtue of the 14th Amendment to the United States Constitution. This act has been construed and upheld by this court in numerous cases. In *State v. Atwood,* 54 Or 526, 102 P 295, 104 P 195, we had before us an indictment which parallels in all material respects the present indictment and we there held that the indictment was sufficient under the Nuisance Act. We quote from that opinion as follows:

'' * * * And clearly the acts complained of in this indictment are injurious to public morals, and we conclude that such acts constitute a nuisance, although not performed in a public place, or may not disturb the peace or quiet of the community or the public. They do openly outrage public decency, and are injurious to public morals, and such

is the effect of the acts charged, even though not done in a public place, or in view of the public. * * *,,

■ It is a universal rule that a penal statute must be definite and certain and if not it is void by virtue of the 14th Amendment to the United States Constitution. The fundamental purpose of this doctrine is to warn individuals of the criminal consequences of their conduct. *Jordan v. DeGeorge,* 341 US 223, 95 L ed 886, 71 S Ct 703.

In *State v. Anthony,* 179 Or 282, 169 P2d 587 (certiorari denied, 330 US 826, 91 L ed 1276, 67 S Ct 865), the "void for vagueness" doctrine involving the precise constitutional question here raised was before us in a case where a party was convicted upon an indictment charging the commission of an act of sexual perversity. The statute upon which the indictment was drawn is § 23-910, OCLA (ORS 167.040), which reads in part as follows:

"If any person shall commit * * * any act or practice of sexual perversity, whether with mankind or beast, * * * such person shall upon conviction thereof, be punished by imprisonment in the penitentiary not less than one year nor more than fifteen years."

In upholding the conviction in the Anthony case, supra, Mr. Justice BRAND, in a well-reasoned and exhaustive opinion, traced the genesis and progress of the doctrine, treating the cases, both state and federal, bearing upon the subject. It would serve no useful purpose for us to restate the principles involved in this doctrine since a perusal of the opinion in that case will give a full understanding of the subject.

■ The Nuisance Act has been on the statute books of this state for nearly a century and its constitutionality, until now, has never been challenged. When

we decided in the Atwood case, supra, that the maintaining of abortion clinics violated the Nuisance Act, such holding became a part of the statute as if written into it at the time of its enactment. *State ex inf. Harvey v. Missouri Athletic Club,* 261 Mo 576, 170 SW 904. See 50 Am Jur 199, Statutes, § 221.

Since the cardinal purpose of the "void for vagueness" doctrine is to warn individuals of the criminal consequences of their conduct, it ill-behooves defendant to claim at this late date that the statute is indefinite and that he was not forewarned that his nefarious practices were a violation of the same since *State v. Atwood,* supra, has been the law of this state for over 40 years.

■ Defendant argues that the Nuisance Act is indefinite and vague in that it is a catchall and leaves to the whim and caprice of a prosecutor the determination of what grossly disturbs the public peace or health, etc. How the act might affect the actions of others is of no concern to defendant for "It is an accepted rule that he who challenges an act under the 14th Amendment must be one against whom the act in fact operates without due process. This defendant is not such a person." *State v. Anthony,* supra.

We hold that the act challenged is constitutional and not violative of the 14th Amendment to the United States Constitution.

It is argued that since the Nuisance Act contains the provision: "If no punishment is expressly prescribed therefor by this code" the indictment in the present case must fail because it charges the crimes of conspiracy to commit a felony, manslaughter by abortion and an attempt to commit a crime and an assault, for all of which punishment is expressly prescribed by the code.

■ Defendant's contention is without merit since the gravamen of the charge in the indictment is unlawfully keeping and maintaining a public place for the purpose of producing illegal abortions, which act grossly disturbed the public peace and health and openly outraged public decency, being injurious to public morals. The allegations in the indictment respecting conspiracy, abortions, etc., were merely elements, incidents, means or circumstances by which the substantive crime was committed and not the substantive crime itself.

In *State v. Atwood,* supra, we find the following language:

> "The allegations of abortion upon Mahala Roberts and other women do not state facts that constitute a crime under Section 1748, B. & C. Comp., and are not intended to, but are only allegations of acts done in the performance of the purpose and intent charged, which are necessary elements of the nuisances, and do not charge separate offenses: State v. Waymire, 52 Or. 281, 97 Pac. 46."

■ The claim of duplicity likewise fails in that the indictment charges only one crime.

■ It is next claimed that the "facts alleged in the indictment do not fall within the purview of section 23-927, OCLA, for the acts are not openly done." The answer to this proposition will be found in the Atwood case where we said:

> " * * * They do openly outrage public decency, and are injurious to public morals, and such is the effect of the acts charged, even though not done in a public place, or in view of the public. * * * "

■ There is a further reason why this proposition merits very little attention. There are three acts stated

disjunctively which come within the purview of the Nuisance Act. In this case the indictment charges that the act not only openly outraged public decency, etc., but it also grossly disturbed the public peace and health. It is a well-recognized rule that if such acts are stated conjunctively in the indictment it will suffice if one is proven. *State v. Laundy,* 103 Or 443, 204 P 958, 206 P 290; *State v. Gerritson,* 124 Or 525, 265 P 422.

■ Counsel earnestly and ingeniously argues in his reply brief that *State v. Buck,* 200 Or 87, 262 P2d 495, is authority for holding the indictment fundamentally deficient. There are several reasons why his position is untenable. In the first place, the indictment charged Dr. Buck with a violation of the manslaughter statute and not the nuisance statute. Furthermore, Dr. Buck was a medical doctor while here it is conceded that defendant is a chiropractor. Under the Oregon Medical Code there are certain abortions which duly licensed physicians and surgeons may lawfully perform. These provisions, however, do not apply to chiropractors. It is claimed that the indictment in the present case must fail because there are exceptions which make some abortions legal and that such exceptions must be negatived in the indictment. Counsel picks from the context of the Atwood case, supra, certain passages which tend to give credence to his position. However, the rule on negation is succinctly laid down in that case in the following language:

> " * * * If this were a prosecution under a criminal statute and in the description of the offense certain exceptions are made, then such exceptions must be negatived in the indictment. * * * But the business of wrongfully and unlawfully committing and producing abortions can have no reference to, nor include instances in, the legitimate practice of medicine, in which an abortion may be necessary

and lawful, and the charge of this offense need not negative such cases.''

■ Illegal abortions are mala in se, denounced by the law, and where one conducts an abortion mill he brings himself within the class clearly condemned by the Nuisance Act. It is said in 1 Wood on Nuisances, 3d ed, § 24, p 46:

"This class of nuisances are of that aggravated class of wrongs that, being *malum in se,* the courts need no proof of their bad results and require none. The experience of all mankind condemns any occupation that tampers with the public morals, tends to idleness and the promotion of evil manners, and anything that produces that result finds no encouragement from the law, but is universally regarded and condemned by it as a public nuisance. In the following pages I shall enumerate a large number of occupations and practices that have been declared nuisances, together with the penalties that have been applied to them by the common law. It cannot be expected that I can give a list of every possible public nuisance, for it must be understood that whether a particular occupation, act or thing has been declared a nuisance or not, is a matter of small importance. If it comes within the rules that have been established by the courts, and such as have been dictated by the highest wisdom and soundest public policy, and is productive of the ill results that characterize these wrongs, it is a public nuisance, and will be punished as such, although the offense is new and has never before been specifically classified as such.''

See *State ex rel. Peterson v. Martin,* 180 Or 459, 176 P2d 636; *People v. Hoffman,* 103 NYS 1000, aff. 82 NE 1130; *People v. Curtis,* 136 NYS 582, aff. 100 NE 1131; 39 Am Jur 302, Nuisances, § 21.

Affirmed.